PATRICK J. McCUSKER *vs.* ALBERT GEIGER, JR. & others.

Essex.    December 10, 1906. — March 7, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Equity Pleading and Practice*, Decree, Appeal, Exceptions. *Evidence*, Extrinsic affecting writings. *Equity Jurisdiction*, To redeem from mortgage, Fraud. *Fraud*.

Where in a suit in equity exceptions to the refusal of the judge who heard the case to make certain rulings have been taken under R. L. c. 173, § 106, which afterwards are allowed by the judge, the court in which the case was heard has no power to enter a final decree while the exceptions are pending, and if under such circumstances a decree purporting to be a final decree is entered and an appeal from it is taken, the attempted decree has only the effect of an order for a decree, and the attempted appeal has no effect at all.

Where in a suit in equity exceptions to a master's report and the action of the court thereon present the questions of law involved in the case in a proper manner to be carried directly to the full court by an appeal, the better practice

is to take such an appeal instead of encumbering the record unnecessarily by asking for rulings and taking exceptions to their refusal as permitted by R. L. c. 173, § 106.

One, who has given a mortgage note for $2,250 and a mortgage of real estate securing it, in a suit in equity to redeem the real estate from the mortgage cannot be allowed to show an oral agreement, made when the mortgage was given, that the mortgage was to be discharged upon his paying $250 in cash and discharging a mortgage on other property for $2,000.

One who voluntarily makes and delivers a promissory note cannot be allowed to show an oral agreement that the note shall be paid in any way other than that which is stated in the note itself.

In a suit in equity to redeem certain real estate from a mortgage for $2,250, the plaintiff may be allowed to show, if he can, that the defendant falsely represented the purpose for which he desired to have the plaintiff give the mortgage and promised to discharge it upon the payment by the plaintiff of $250 and the discharge by him of a certain mortgage on other property, "intending all the time not to keep that promise," but this is not shown by evidence warranting merely a finding that the defendant's promises were made "without the intention of performing those promises" and a further finding that the defendant "did falsely represent the purpose for which he desired the plaintiff to give the mortgage of $2,250 on the " property in question; and by such evidence the plaintiff shows no right to redeem the property except by the payment of the full amount due on the mortgage.

An affirmative intention not to keep a promise which may give a remedy for fraud at law or in equity is not shown by proving the mere absence of an intention to perform.

BILL IN EQUITY, filed in the Superior Court on June 2, 1904, and amended on April 10, 1905, seeking to redeem certain real estate on Washington Street in Boston from a mortgage, purporting to be given to secure a promissory note for $2,250, by the payment of $250.

The case was heard by *Stevens,* J. It appeared that on May 14, 1903, the plaintiff and the defendant Geiger entered into an agreement in writing for the exchange of real properties, which was carried out exactly in accordance with its terms. The plaintiff had unimproved land in Newton and the defendant Geiger had improved real property on Washington Street in Boston. By the agreement, the plaintiff was to pay Geiger $6,500 in money, convey the Newton property to Geiger, subject to a mortgage of $6,500, and give a second mortgage by a straw man upon the Washington Street property for $2,250. Geiger was to convey the Washington Street property subject to a mortgage of $20,000, and by a straw man was to give a second mortgage upon the Newton land for $2,000. The mortgage upon the Washington Street property was assigned to the

defendant Brewster, who, for breach of conditions, began fore-closure proceedings. The defendant Smith was the straw man who signed the $2,000 mortgage upon the Newton land.

The plaintiff based his right to redeem upon an oral agree-ment, made contemporaneously with the agreement in writing, that he might have the $2,250 mortgage discharged upon pay-ment of $250, and upon an oral representation made to him by Geiger at the time the agreement was made that " he (Geiger) was forthwith to erect valuable structures upon the real estate in Newton ; that he was desirous to have the plaintiff take back and hold a mortgage thereon in the ostensible sum of $2,000 as a discouragement and deterrent to fraudulent contractors and lienors, and suggested that the plaintiff at the same time exe-cute to him a mortgage for $2,250, including therein security for said sum of $250 actually due by the plaintiff to the defendant Geiger," and that such representation was false.

The case had been referred to Wilbur E. Rowell, Esquire, as master, who filed a report including the facts stated above. At the hearing before the master the plaintiff offered the follow-ing evidence :

" The plaintiff and one Hogan, who was a lawyer, and who acted as a broker for the plaintiff in the transaction, went to Geiger's office and upon consultation they found that they were $500 apart in the proposed trade. Geiger held his Washington Street property at $36,500, that is at $16,500 above the $20,000 mortgage ; and McCusker held his Newton land free of incum-brance at $16,000. McCusker was willing to make an even ex-change and Geiger was willing to exchange if he might receive $500. Each conceded something and they agreed to exchange upon the payment of $250 by McCusker to Geiger. McCusker was ready to pay and discharge the existing $6,500 mortgage on his Newton land, or if Geiger preferred to take the land subject to the mortgage, McCusker was willing to pay the $6,500 to Geiger in cash. Geiger said he would take the $6,500. He then said that he intended to build on the Newton land, had practically made arrangements to build, and would like to have an additional mortgage of $2,000 on that as a protection against liens, and suggested that each give the other a mortgage for $2,000 stipulating that they should be given with straw names

on the notes and mortgages; he also suggested that McCusker might, if it would be a convenience to him, include the $250 in the mortgage which he was to give, making it for $2,250. McCusker was willing to do what was requested to accommodate Geiger if he was to pay only $250. Geiger on his part promised repeatedly and definitely that he would discharge the $2,250 mortgage on the Washington Street property at any time McCusker might desire it upon payment of the $250 and discharge of the $2,000 mortgage on the Newton land; and it was said more than once that all McCusker was to pay in respect of the mortgage given by him was $250. The negotiations that day ended with instructions to Hogan to put the agreement into writing, but Geiger expressly told him to leave out the arrangement about the discharge of the two second mortgages, because he should want to show that writing to contractors. . . . Geiger made the same promise when the deeds were delivered, namely, that he would stand by his oral agreement. Once, shortly after the deeds were delivered, McCusker discussed with Geiger raising a second mortgage of $6,000 on the Washington Street property, and said that in that case he should want to pay him the $250 which he owed him and asked him if he was ready to have the two mortgages discharged. Geiger said that that was all right. Reduced to its lowest terms the plaintiff's case is this, that Geiger falsely represented the purpose for which he desired to have McCusker give the mortgage of $2,250 on the Washington Street property, and promised to discharge it upon the payment of $250 and the discharge of the second mortgage on the Newton property, intending all the time not to keep that promise."

This evidence was admitted subject to the defendant's exception, the master being uncertain beforehand what would develop, and being desirous of reporting the whole case; but it finally was excluded, and the master found and reported that the plaintiff was entitled to redeem only upon payment in full of the $2,250 mortgage note. Being of the opinion that he ought to make a finding of fact applicable to the case if his view of the law was wrong, he found as facts, " That the defendant Geiger did falsely represent the purpose for which he desired the plaintiff to give the mortgage of $2,250 on the Washington

Street property, and that he did prior to and at the execution of the agreement of May 14, 1903, and again upon the delivery of the deeds, promise that he would discharge that mortgage upon the payment of $250 and the discharge or assignment of the second mortgage on the Newton land, without the intention of performing those promises; and that the plaintiff believed the misrepresentations and relied upon the promises and was thereby induced to make the contract including the mortgage now in question."

The master also found that the defendant Brewster gave Geiger $1,100 for an assignment of the mortgage, and at the same time made a declaration in writing that he held one undivided half of it in trust for Geiger, and was affected with knowledge of the plaintiff's rights.

The plaintiff and the defendants seasonably filed objections to the report with the master, and exceptions in court, and the case was argued upon the exceptions. The judge recommitted the report to the master to find whether the defendant Brewster, when he took the assignment of the mortgage, had notice that the plaintiff asserted that there was an oral agreement between him and the defendant Geiger that he might redeem on payment of $250 and interest. The master thereupon found and reported that Brewster had constructive but not actual notice.

At the hearing upon the exceptions to the master's reports the defendants asked the judge to rule as follows:

1. Upon the facts found and stated by the master, the plaintiff is only entitled to redeem upon paying in full the $2,250 mortgage note.

2. The parol evidence cited by the master in his report has no tendency to show a failure or partial failure of consideration of the $2,250 mortgage note.

3. The parol evidence cited by the master in his report was inadmissible to vary, contradict or control the contract expressed in the $2,250 mortgage note, or to establish an independent oral agreement that the note should be surrendered by Geiger upon payment of a sum less than its face.

4. An actionable false representation must be as to some past or existing fact.

5. Geiger's representation that he "intended to build on the

Newton land and had practically made arrangements to build, and would like to have an additional mortgage of $2,000 on that as a protection against liens," was not a representation as to a past or existing fact, nor was it a representation which justified a rescission of the contract expressed in the mortgage note.

6. No part of the evidence recited by the master tended to prove an actionable fraudulent representation, or justified a rescission of the contract expressed in the mortgage note.

7. Upon the facts found by the master, the defendant Brewster was a *bona fide* holder for value before maturity.

The judge gave the fourth, fifth and seventh rulings requested, and refused to give the first, second, third and sixth, and ordered a decree to be entered permitting the plaintiff to redeem upon payment to the defendant Brewster of $1,125 with interest.

The defendants alleged exceptions to the refusal of the judge to rule in accordance with their first, second, third and sixth requests.

The bill of exceptions was filed on April 17, 1906, and was allowed by *Stevens*, J., on October 27, 1906. On March 30, 1906, a decree was entered in accordance with the order of the judge, which purported to be a final decree. On April 11, 1906, the defendants appealed from this decree. On April 28, 1906, the plaintiff also appealed.

The case was submitted on briefs at the sitting of the court in December, 1906 and afterwards was submitted on briefs to all the justices.

*Asa P. French & E. B. Draper*, for the defendants.

*J. F. Quinn*, for the plaintiff.

KNOWLTON, C. J. The defendants took exceptions to the refusal of the judge to give certain rulings requested on questions of law at the hearing upon the exceptions to the master's report. These exceptions were allowed and are now before us for consideration. What is called a final decree was entered in the case and an appeal was taken therefrom.

The entry of this decree was irregular and unwarranted. The pendency of exceptions deprived the court of the power to enter a final decree, which, like a formal judgment in an action at law, is a final disposition of the case unless an appeal is sub-

sequently taken. R. L. c. 173, § 79. *Tyndale* v. *Stanwood*, 186 Mass. 59, 63. *Prescott* v. *Prescott*, 175 Mass. 64. *Goff* v. *Britton*, 182 Mass. 293. The decree had no greater effect than an order for a decree, which cannot be executed until the exceptions are disposed of. The appeal is not before us, and the case must be determined on the bill of exceptions.

While it is possible, under the R. L. c. 173, § 106, to raise questions of law by exceptions where the hearing is upon an issue of law, and where there is a simple and perfect remedy by an appeal, (see *National Mahaiwe Bank* v. *Barry*, 125 Mass. 20, *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542, *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456,) it is the simpler and better practice in such cases, as was said in *McCallum* v. *Lambie*, 145 Mass. 234, to bring the questions of law directly to this court by an appeal. Except in actions at law in the Supreme Judicial Court, it is ordinarily unnecessary to take exceptions in a hearing upon a demurrer or a motion to quash. Exceptions to a master's report in a suit in equity present the questions of law in a proper form to be carried directly to the full court upon an appeal. *O'Brien* v. *Keefe*, 175 Mass. 274. To take exceptions at such a hearing ordinarily results in an unnecessary encumbrance upon the record.

The questions raised by the bill of exceptions are, in substance, whether it was competent for the plaintiff to prove by parol evidence the collateral oral agreement upon which he relied; whether the parol evidence recited in the master's report was competent to prove actionable fraud upon the part of Geiger; and whether upon the facts reported such fraud was made out.

1. The plaintiff contends that it is competent for him to prove an oral agreement made with him by the defendant Geiger, before and at the time of the execution of the written agreement, and at the time of the delivery of the deeds, that Geiger would discharge the $2,250 mortgage to be given by the plaintiff, upon the plaintiff's paying the sum of $250 and discharging the $2,000 mortgage upon the Newton property, — that is, that all that the plaintiff was to pay upon the mortgage given by him was the sum of $250. The master has found that this agreement was in fact made, substantially as alleged by the

plaintiff. But we are of opinion that this contention of the plaintiff cannot be sustained. This oral agreement is inconsistent with the written agreement of exchange made by the parties, and directly at variance with the terms of the $2,250 mortgage note given by the plaintiff to Geiger. The note is an unconditional promise to pay in money; the contemporaneous oral agreement is that it shall be paid only partly in money and partly by discharging another mortgage upon other property. It is in substance an agreement for a partial set-off of the two notes, instead of their payment in money. Such a contemporaneous oral agreement cannot be shown to vary, contradict and control the written agreement. *Torpey* v. *Tebo*, 184 Mass. 307. *Finnigan* v. *Shaw*, 184 Mass. 112. *Taylor* v. *Goding*, 182 Mass. 231. *Merrigan* v. *Hall*, 175 Mass. 508. The plaintiff, having voluntarily made and delivered this note, cannot defend against it by showing an oral agreement that it should be paid in any other way than that stated in the note itself. *Wood's Sons Co.* v. *Schaefer*, 173 Mass. 443. *Wooley* v. *Cobb*, 165 Mass. 503. *Tower* v. *Richardson*, 6 Allen, 351. *Adams* v. *Wilson*, 12 Met. 138. *Underwood* v. *Simonds*, 12 Met. 275. Nor was this evidence competent to show the real consideration of the note. On the undisputed facts it appeared exactly what that consideration was. As is shown by the master in his careful report, it did not tend to show any defect in or failure of the consideration of the mortgage and note given by the plaintiff. The stipulation that the $2,000 note might be given by a mere man of straw shows that it was not contemplated that Geiger should be held personally for its payment. It is true that an agreement by parol collateral to the written agreement between these parties and on a subject distinct from that which is provided for by the latter may be proved; but this doctrine cannot be extended to contemporaneous oral agreements on their face inconsistent with what is written, and so cannot avail the plaintiff. *Durkin* v. *Cobleigh*, 156 Mass. 108, 109. There is nothing in *Drew* v. *Wiswall*, 183 Mass. 554, *Cole* v. *Hadley*, 162 Mass. 579, or *Corlies* v. *Howe*, 11 Gray, 125, inconsistent with this. Nor was there anything to indicate that the oral agreement was in any way made a condition precedent to the taking effect of the written agreement or of the deeds, notes or

mortgages delivered thereunder, within the rule of *Elastic Tip Co.* v. *Graham*, 185 Mass. 597, and *Wilson* v. *Powers*, 131 Mass. 539. See *Radigan* v. *Johnson*, 174 Mass. 68. The plaintiff can derive no benefit from proof of this contemporaneous oral agreement.

2. In our opinion the master correctly ruled that it was competent to prove oral declarations of the defendant Geiger for the purpose of showing a fraudulent scheme for inducing the plaintiff to enter into the contract of exchange; and if the plaintiff's full contention had been made out by the proof, he well might have claimed that the $2,250 note and mortgage had been obtained from him by the fraud of Geiger, and so that he had a right to refuse to be bound by them. That contention is correctly stated by the master in his report. It was "that Geiger falsely represented the purpose for which he desired to have McCusker give the mortgage of $2,250 on the Washington Street property, and promised to discharge it upon the payment of $250 and the discharge of the second mortgage on the Newton property, intending all the time not to keep that promise." The gist of the fraud alleged is that Geiger had obtained from the plaintiff a note and mortgage for $2,250 instead of for only $250, with the affirmative intention of not keeping the promise by which he obtained them. The case is perfectly analogous to the ordinary case of one buying goods with the intention of not paying for them. Although the general rule is that a fraudulent representation, to be actionable, must be of a material existing fact, and not merely promissory in its nature, yet the act of obtaining property with such a fraudulent intention is of itself an actionable fraud. *Dow* v. *Sanborn*, 3 Allen, 181, 182. *Kline* v. *Baker*, 99 Mass. 253, 255. *Watson* v. *Silsby*, 166 Mass. 57, 59. But the difficulty with this part of the case is that the essential feature of this contention of the plaintiff is not found by the master. The finding is that Geiger's promises were made "without the intention of performing those promises," and upon the facts it would have been difficult for the master to have gone further than this.⸱ But the distinction between an affirmative intention not to keep one's promises, which is an actionable fraud, and the mere absence of an intention to perform them, which is not of itself actionable, was pointed out

by this court in *Watson* v. *Silsby*, 166 Mass. 57, and in *Chamberlain* v. *Hoogs*, 1 Gray, 172, 174, 175. The only remaining fact found by the master, that "Geiger falsely represented the purpose for which he desired to have McCusker give the mortgage of $2,250 on the Washington Street property," is manifestly not sufficient to entitle the plaintiff to avoid his agreement. The wrong done to the plaintiff did not come from this misrepresentation, but from Geiger's refusal to carry out his oral agreement. *Dawe* v. *Morris*, 149 Mass. 188. *Knowlton* v. *Keenan*, 146 Mass. 86. The cases cited by the plaintiff to show that there may be circumstances in which a misstatement of an existing intention will constitute a misrepresentation of a fact and so may amount to actionable fraud, are not material here.

3. It follows from what we have said that the plaintiff shows no right against the defendant Geiger to redeem from the $2,250 mortgage upon the Washington Street property, except upon payment of the full amount due thereon ; and it is not necessary to determine whether the defendant Brewster had the full rights of a holder of the note in due course, or whether he had notice of the oral agreement between the plaintiff and the defendant Geiger. It is unnecessary to consider the requests for rulings more particularly.

*Exceptions sustained.*